Council for Wynn uses in large measure. I'm sorry. Excuse me. Your Honor, Federico Castellanser for the appellants. Council for Wynn in large measure uses the cases of Guerrero versus Gates and Diaz versus Gates, which they cite at 357 Fed Third 9-11 and 354 Fed Third 480. Perhaps the judge used the same ruling at that time for her decision. It's not clear. She didn't give any guidance. However, both of those cases were subsequently and prior to today superseded. One was in the case of Guerrero versus Gates was superseded by 442 Fed Third 697. And in the opinion, the court itself indicates that the opinion at 357 Fed Third 9-11 is superseded by this opinion. Diaz versus Gates also heavily relied upon by the attorney for Wynn was superseded by an en banc ruling at 420 Fed Third 987. The decision in Guerrero versus Gates and Diaz versus Gates exactly supports our position. The decision basically now states, and this is the law, at least at this moment, a false imprisonment that caused the victim to lose employment and employment opportunities was an injury to business or property within the meaning of Section 18 USC 1964. In other words, exactly the opposite of what they previously stood for when they were utilized by my opponents. And I in no way suggest misconduct, because it's clear that when my opponent filed his opposition in June of that year, it was in August that the first of these two decisions was run. Wasn't physical property seized also? It was, sir. And I believe that the court has it. Why isn't that the end of it? I think it is. I mean, assuming that you're assuming that you're correct, that under our law now, just stopping some guy from working the way he wants to work is enough to spell out a Rico fence. Let's assume that's true. Whether that's true or not, doesn't he say that his, his computers and his records were seized? Quite right. Not just Mr. Leonard and Mrs. Leonard at the time, Jesse Douglas, but also the real end corporation and the real incorporation of Santa Monica had business records seized and were attorneys, the attorney that was hired by Mr by Mr. Leonard and the real ends was actually Latham and Watkins partner, Manny Abascal, and it's reads like a novel. The FBI wired him and that he was able to get on tape the extortionary threats by Sergeant Wynn and by Mr. Trattner, which led to the FBI raiding and arresting Mike Silver and breaking this up. Well, nevermind that. Are you, are you not, what are you talking about? Are we still talking about the attorney's fees property? I'm not talking about the attorney's fees that were incurred specifically to defeat the extortionary threats that were set forth, but the court is right. Quite right. And I did not mean to move away from that position. I will put a punctuation on it. Obviously I agree with the court's position with regard to property. Well, don't agree with my positions because I don't necessarily have all right. I will, I will agree with the court's posit, at least a seemingly inherent in its, in its statement or its question. But even we're under control, is that right? Yes. But even without that as we, as we've stated, I think that Guerrero and Diaz have actually done a complete flip to our side of the street. In addition to which of course I was trying to, and not very articulate, obviously make a transition to the attorney's fees being something that were incurred, not so much to defend against a criminal charge, Latham and Watkins not being known for its criminal defense, but rather to defend against the extortionary threats, which it did in the way that I suggested in the kind of the dime store novel, seemingly a idea of what occurred, but it was very real. In addition to that, we have in our pleadings and in the briefs exposed and discussed various cases that support not just attorney's fees, but the loss of profits. When you divert the very large sums of money that were diverted to Latham and Watkins, you do not have the money to support your torrent store and it goes out of business. Not to mention that Mr. Leonard was trying to protect himself and defend himself from what he did not know for sure was going on. He could not attend to his businesses. Maybe he shouldn't aim that high on the legal fee schedule if it's going to put him out of business. You know, I would have done it cheaper, but however, nobody asked me, but what, what certainly did occur is that it was indeed effective. And I suppose that's why people do tend to, to pay those kinds of fees. I don't know. But in any event, I was brought in by Latham and Watkins to do this case. So I guess there's something there. So that may have been a plug for my referring attorneys. But in any event, we have shown a variety of cases in our briefs that show that the various aspects of this that we have alleged were losses are supported by cases. And I'm not going to, I know this court has read thoroughly the briefs. I would only say this, that in the case, as it is exposed in the Diaz case, they talk about employment prospects, not just employment opportunities as to Guerrero, and they refer to intentional interference with prospective business relations as being a tort under California law sufficient for the predicate act. That is indeed one of our allegations amongst our state causes of action was intentional interference with prospective business advantage. Turning for a moment to control of the Newton station. Now, we alleged as best we understood the facts with regard to control of the Newton station. For the very first time, the district court in its wisdom gave us its thoughts with regard to our not being able to have adequately alleged the control at that time. We were not, however, given an opportunity to act upon those salient thoughts because that was the very first time that had ever been raised. Previously, we had been talked about with regard to not properly alleging sufficient business damages or damages to property. And as I said, perhaps the court was operating off the law as it was at the time. No criticism there. But when we were given for the first time the suggestion that we had not adequately alleged control of the Newton area station, we were not given an opportunity to amend to show that we could get around that pleading. You called you called you dubbed the enterprise the Newton area station. This is a pleading. This is all a twelve B six level. Correct. That's right. OK, so so you say there was an enterprise and it was composed of silver. And when when an officer's couple of other some other policemen, that's right, and maybe somebody else, did you add the lawyer in? I forget. Yeah, Tretner and a lawyer. So it's an enterprise composed of all these people. And we call this enterprise the Newton area station. Yeah, I take it right. That's one of them. The other is the quality food company. Quality food doesn't I mean, clearly enough, quality foods is an enterprise. All you need to be an enterprise to be a separate entity. I suppose it's an error. There may be a lot of other things wrong with it, but it looks like it's some kind of enterprise. It's a corporation, right? It is, indeed. And it's separate from the individuals. It's also true. So I guess we're not we're worried about the Newton area station. Sir. OK, so when you plead Newton area station, that mean you had to capture the whole station. Is that you're pleading that you were that they had the whole station under their control? No, that there was a sufficient control of the people involved in going in and making these illegal searches and seizures. And that was essentially Sergeant Wynn. But what's enterprise like? And we're not we're not we don't have enterprise in front of us, do we? We just have control of this thing, whatever it was. That's true. That's true. The issue is control. It is. And I believe that we can adequately have given the opportunity. Mr. Silver had a in his office, he had a workout place where all these fellows from the Newton area station would come. And we have alleged and we believe we can prove that they received gratuities and money and women, as a matter of fact, at that location, which brought about the control over the Newton area station. At least at this point, those are our allegations. And we believe that we can plead around this problem if given the opportunity. Furthermore, as I mentioned in briefly, with regard to quality foods, there was no comment nor decision by the court that we had not adequately alleged that quality foods was controlled and a part of this as an enterprise in engaging in this activity. We can prove and we will allege, if allowed to do so, that Sergeant Wynn had previously collected money for quality foods and had received a percentage and would have received a percentage of the collection of this money fraudulently if he had reached the fulfillment of the scheme. In any event, I'd like to reserve the last five minutes with the court's permission, unless there are any questions. Thank you. Good morning. Good morning, Your Honor. May it please the court. John Waller, John J. Richter, Counsel for Defendant, Appellee Michael Silver. Let me take just a brief moment to advise the court. I'm splitting my time this morning with Mr. Quinn, who represents Sergeant Silver, the other appellee. Sergeant Wynn? I'm sorry, Sergeant Wynn. I'm sorry. Looking at a notice of deposition that was sent to me. We won't take that as an admission of anything. Trust me, that goes back actually to a notice of deposition that was served on me just the other day, Your Honor, with the same mistake. And I apologize for creating more confusion here. Oh, you're just making sure we're awake. Fair enough. I'm going to focus my attention on the enterprise issue, or more appropriately, the lack thereof. And Mr. Quinn is going to focus on the enterprise issue or the lack thereof. The issue, it seems to me, that the district court decided on was control.  That's not exactly the enterprise issue. That's a question of assuming there's an enterprise, that these people control it. Correct. General Motors is an enterprise, period. Right? Correct, Your Honor. The question is, does somebody control it? And that's what I was getting to, Your Honor. The issue that the district court decided on was control. Correct. That's what you're going to argue, is this control? Correct, Your Honor. Okay. Not enterprise. Not enterprise. Control of the enterprise or lack thereof. Whatever it might be, did these guys control it? Correct. Okay. Let's start with the Newton Area Station. And perhaps the best item to clear the record is to go back to what is actually alleged in the Third Amendment complaint, which is the operative pleading here. And in fact, contrary to what we were just told by my distinguished counsel colleague, the allegation for the Newton Area Station is paragraph 40. It's on page 369 of the record. Just a minute. This is the first cause of action. Correct. Okay. That's the enterprise. That's what's not in front of us at the moment. Right. Then go to 41, defendant Silver Foods, Inc., which is effectively a conglomeration of M&M Foods, Quality Foods, all of Silver's companies, and Wynn acquired, maintained, and controlled an interest in the Newton Area Station. What's the conglomeration? Silver Foods, Inc., and Wynn. Foods, Inc. Foods, Inc. is a particular company. Foods, Inc. is actually a conglomerate. Yes. According to the pleading, according to the pleading, Foods, Inc. is a particular company, i.e. M&M Foods, Inc. Correct. By definition. By definition. Paragraph eight. I have that. It's actually paragraph eight. Foods, Inc. isn't a bunch of other things. It's M&M Foods, Inc., correct? Correct. Okay. It is, although I must add for your court's benefit that M&M Foods, in fact, is, Quality Foods is a DBA of M&M Foods. It is not a separate freestanding corporate entity. Moving forward though, what we have is an argument here that's being, or an third amended complaint, that Silver, Wynn, and Foods somehow controlled the Newton Area Station. What your Honor earlier observed is this amorphous non-enterprise something. Newton Area Station is composed, obviously, of numerous police officers, numerous staff at that particular branch of the Los Angeles Police Department. It is not something that Silver or Foods, Inc. could control simply by paying a bribe, assuming that that allegation is deemed to be correct, to Sergeant Wynn, who is a line level officer, even if there were other police officers that, in fact, had bribes paid to them, you are not at a stage where that simple payment of a bribe to one or perhaps even two or three officers, there's no evidence of that. There's no allegation. How do we know that you can't capture the Newton Station by paying money to Wynn, who then distributes it among his colleagues, or you pay extra money to the colleagues too? How do we know from the pleading, not from the world, how do we know from the pleading that that was not sufficient to gain control of the Newton Area Station? From the pleading, Your Honor, I have to say there is no way you could know that for certain. It defies credibility. We're talking about 12b-6. We're not talking about summary judgment. We're talking about a 12b-6. So what part of the pleading is defective? It says these guys controlled that station. But even under 12b-6, the court only has to accept well-pled factual allegations. What does that mean, though? That doesn't mean that we find them likely to be proved or plausible from our experience. I believe it allows the court, and in this case the district court did, set it aside as something that was beyond belief, that the allegation of the payment of a single bribe to a single police officer. Well, suppose it's not me, Your Honor. It said multiple bribes, not a single. They pled multiple bribes, gratuities, payments, and benefits to him and to other LAPD officers. That's what they pled. They have pled that, Your Honor. Yes. I'm not going to run from that particular allegation. Does it defy credibility that you couldn't capture a police station by paying enough bribes to enough police officers? I suppose if you were paying enough bribes to enough police officers, you might arguably be able to control an enterprise. I don't see that's what we have here. We have an allegation that there were multiple bribes paid to Sergeant, pardon me, to Sergeant Nguyen and others without ever going beyond that. Well, this is only the pleadings. It is. I'm not sure what more you expect. I have trouble with, I expect, Your Honor, that there would be more allegations, that there would in fact be some, pardon me, some enterprise, some aspect of what this Newton area station is, that is more than just an amorphous concept. How can you, how can the payment of a bribe to a single police officer control anything other than that individual police officer or the police officers that he may distribute the bribes to? That would not be the Newton area station. That would be payment to Sergeant Nguyen. That would be a payment to Sergeant Nguyen and other police officers, but not to the Newton area station. Well, that's also a possibility, but I don't understand why they can't at least successfully plead that it did more than capture an individual police officer, but rather a whole structure within that police station. I don't understand why they can't just plead that. Because it defies credibility, Your Honor. Well, Counsel, we have a history of the whole Rampart fiasco. It seems to me that it's not for us to say that this is beyond credulity. This looks like a case where perhaps you might win on summary judgment, but 12b6 is pretty tough. I understand that, Your Honor, and perhaps we will have to go back to 12b6 level at a later stage, if that's what Your Honor's decision is today. Let me, before we run out of time for my counsel, unless there are other issues, Your Honor, I just want to ask. I have a question that shouldn't take away from your time that is allotted to you, but have the parties to this and the other tentacles of the octopus made any effort to settle this matter, or to use the services of our mediation department? There have been, as Mr. Sayre would be well aware, there have been at least four attempts, I believe, with four separate sets of judges to try to resolve issues. Let me simply close by saying two things. One, with respect to several of the things that my colleague, Mr. Sayre, said,  Secondly, with respect to RICO, just as a closing observation, it's a statute that was originally crafted and drafted for purposes that were very tightly confined to criminal enterprises. It's been well out of control, and Judge Marshall and the district court and others are trying to rein it in, and I hope this court will do as well. Thank you. We'll hear from Mr. Brown. Thank you, Your Honors, and may it please the court, I'm Joe Quinn here for Sergeant Nguyen. Just following up on one point that you discussed with my colleague, I think well-pleaded factual allegations means non-conclusory, and I think all the factual allegations that, or the allegations that have been talked about today are conclusory. Our Plaintiff's Counsel got more specific. That's not in the record. Plaintiff's Counsel has had four bites at this apple. This is a third amended complaint, and I think their chance to be more specific, to make this well-pled, has run. I wanted to discuss the property or business injury issue with the court today, and Plaintiff's Counsel is correct. Diaz and Guerrero went on bonk, and the decisions would seem to be against our position, but it's not the law of the circuit. The law of the circuit is Shidler. The 2006 Supreme Court decision that resolved the competing perspectives of the, well the Ninth Circuit in Diaz, as represented in Diaz, and the Seventh Circuit as represented in Evans, and it shows the Evans perspective, which was the, in Shidler, the clinic's workers' ability to continue to do the work that they wanted to do was not a RICO injury for purposes of the statute. The other aspect of the injury issue is, of course, proximate cause. Excuse me, though, one of the plaintiffs is a business, not an individual, and there's an allegation that it lost profits. Why isn't that a perfectly ordinary form of property loss or injury? Well, actually, in Anza, Your Honor, the allegation was that they lost, it was two competing companies, and one lost profits, and the court said that was not, we can't say that that is proximately caused by this. You're not answering my question. Proximate cause isn't what I asked. Okay. I asked about whether it's a type of injury that is an injury to property or business. And the injuries that were actually alleged here, which were, let me say that the answer to the question goes to the proximate cause issue, which is the next issue, which is, yes, I do believe that those could be property or business injuries. I agree with you, but the fact is you have a proximate cause issue, and there are lots of factors that go into why businesses continue to operate or close. Certainly, restaurants don't last long, most of them, and as the Supreme Court identified in Anza, we cannot say for certainty that any particular result flowed from any particular act when you're talking about it as amorphous a concept as competition. The other alleged injuries, which are the attorney's fees, there again, you have a proximate cause issue. The attorney's fees were incurred after the search warrants were obtained. The search warrants were issued by a Los Angeles Superior Court judge. You know, there's no allegation that there was a judge involved in this enterprise, and there is an allegation that there were false statements in the warrants, in the affidavits, but there again, completely conclusory. The record, the affidavits, and the warrants were in the record at the time of the 12B6 motion, and there was nothing said about them. Let me ask this, counsel. If the fees were in part in connection with trying to stop the extortion of the business, would those not be appropriate for inclusion? Well, Your Honor, perhaps in part, again, though, you have, so they could be injury to property or business, but you have a proximate cause issue. There is no question that counsel, I mean, Well, they've alleged a proximate cause. Here we are, 12B6. And proximate cause is dealt with at 12B6. That was the position in Anza, the procedural position of that case. There, you know, RICO is a limited statute, and as my co-counsel pointed out, and what 1964, 18 U.S.C. 1964 says is that there has to be an injury to property or business, and it must be caused by the RICO activity. Well, they certainly allege that it was. In conclusory, in a conclusory faction. And just one last point, Your Honors, is this issue about the control of the enterprise. I don't, as I read the complaint, I don't see any allegations above an ad hoc formation for the shakedown. And whatever happened, that is, you know, those may be torts that can be addressed, or even maybe crimes that can be addressed in another form, but they're not proper for a RICO complaint. And with that, Your Honors, I submit. Thank you. I believe Mr. Stare has some rebuttal time remaining. I do. Thank you, Your Honor. I'm sure that my colleague has innocently misstated the holding in Shidler. Let me just read for the Court what that is so we can put it in context. The holding by Justice Breyer was that threatening or committing physical violence unrelated to robbery or extortion, which obstructs, delays, or affects commerce, falls outside the scope of the Hobbs Act, meaning that there was no predicate act, that is the holding in Shidler. It is not the holding as counsel would suggest that it is. We have the predicate act. We have the predicate act based upon Diaz, where the predicate act is intentional interference with prospective business advantage. That is a California tort. There's been no attack on that as being the predicate act. Secondly, the issue about ANZA, counsel has also respectfully misstated what happened in ANZA. ANZA was a case in which it revolved around very particularized facts. The facts were a situation where there was an allegation that somebody went out of business because the other person wasn't paying his taxes to the state, and therefore was getting a competitive advantage. And the court rightly found that the person being defrauded was the state. That's what ANZA stands for. Here we have a situation where the money is being taken away from the business to pay Latham and Watkins. Time is being taken away from the business to pay Latham and Watkins. There was nothing unusual about this enterprise. The real end of Malibu, the real end of Santa Monica, following sort of a cookie cutter formula, had both been successful. Torrance was following that same formula. There was no money to keep it afloat during the early time, and that's what we can prove, and that's why it went out of business. There's nothing speculative about that. That is an entirely different situation. All of this is captured on the tape. The tape was held on the person of Manny Avascal. It was placed there by the FBI. Evidence, unless it's in the pleadings, it's not pertinent. In any event, causation, as argued by counsel, is an issue of fact also. And once you start arguing it's an issue of fact, then you're outside the boundaries of Rule 12b-6. We're talking about whether our pleadings are adequate at this stage. Perhaps there will come a time that this can be argued in front of a trier of fact. Even to argue facts under a summary judgment motion is simply that, the argument of facts. And I stand ready for any questions, if the Court has any. I don't believe we have any additional questions for you. Thank you very much. Thank you. The case just arguably is submitted, and we will take about a ten-minute recess. All rise for a ten-minute recess.
judges: B. Fletcher, Fernandez, Graber